UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NEW CENTURY FINANCIAL, INC., | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. H-09-2060 |
| | § | |
| OLYMPIC CREDIT FUND, INC., | § | |
| | § | |
| Defendant. | § | |

**OPINION AND ORDER**

Pending before the Court is Plaintiff New Century Financial, Inc.'s ("New Century")
Motion for Partial Summary Judgment (Docs. 43–44), as well as Defendant Olympic Credit
Fund, Inc.'s ("Olympic") response (Doc. 54), and New Century's reply (Doc. 64–65).  Also
pending before the Court is Defendant Olympic's Motion for Summary Judgment (Doc. 45), as
well as Plaintiff New Century's response (Doc. 55), and Olympic's reply (Doc. 66).  Also before
the Court are Defendant Olympic's Objection to the Magistrate Judge's Ruling on Plaintiff's
Motion for Leave to Take Trial Depositions of Will Narez and Heather Panteleeff (Doc. 52) and
Objection to the Magistrate Judge's Ruling on Defendant's Motion for Leave to File First
Amended Answer and Counterclaim (Doc. 72).  Upon careful review and consideration of these
motions, the responses, and replies thereto, the relevant legal authority, and for the reasons
explained below, the Court finds that Defendant Olympic's motion for summary judgment
should be granted and Plaintiff New Century's should be denied.

I.  Background and Relevant Facts

This is a contract and tort case in federal court pursuant to diversity jurisdiction.  28
U.S.C. § 1332(a).  Texas substantive law governs this diversity action.  *General Elec. Supply Co.
v. Utley-James of Texas, Inc.*, 857 F.2d 1010, 1012 (5th Cir. 1988) (citing *Erie Railroad Co. v.*

*Tompkins*, 304 U.S. 64 (1938)).

New Century is a Texas corporation with its principal place of business in The Woodlands, Texas.  (Doc. 1 at 1.)  Olympic is a Washington corporation.  (*Id.*)  New Century and Olympic are in the business of factoring and both are members of the International Factoring Association.  (*Id.* at 2.)  Factoring is a form of financing where one business, the factoring client, sells its right to receive payment for goods sold or services rendered to customers, called account debtors, at a discounted price to another business, referred to as the factor.  (*Id.* at n.1.)

On November 29, 2006, Olympic and Education Advance Corporation ("Education Advance") entered into a contractual factoring relationship.  (*Id.* at 2.)

On or about April 8, 2009, Education Advance contacted New Century to discuss the prospect of a factoring relationship.  (*Id.*)  From April 8 to May 19, 2009, New Century conducted due diligence regarding the potential transaction.  (*Id.* at 3.)  New Century discovered that Education Advance and Olympic were already in a factoring relationship.  (*Id.* at 3–4.)  Before New Century could become the new factor, Olympic had to release its ownership and security interest in the outstanding accounts.  (*Id.* at 4.)

On May 1, 2009, New Century alleges that Education Advance converted a check rightfully belonging to Olympic under the factoring agreement in the amount of $254,430.  (*Id.*)

Prior to finalizing the purchase, New Century claims it asked Olympic's account executive for the Education Advance account, Heather Panteleeff ("Panteleeff"), to describe Olympic's overall factoring relationship with Education Advance.  (Doc. 1 at 5.)  New Century says Panteleeff failed to mention the conversion issue and described Olympic's overall factoring relationship with Education Advance as "good" and argues that Olympic's failure to disclose the conversion issue impliedly warranted that the accounts were valid, owed and due, and that no

counterclaim, right of set-off, recoupment, or defense was outstanding with respect to the factoring agreement between Olympic and Education Advance.  (*Id.*)  New Century also alleges that, prior to negotiations regarding the payoff agreement, Olympic was aware of potential collection issues with Education Advance because another factoring company, Rexford Funding, warned Olympic of its own collection and conversion issues with Education Advance.  (*Id.* at 6.)

On or about May 14, 2009, Olympic, New Century, and Education Advance signed a Payoff Agreement (the "Payoff Agreement") under which New Century paid Olympic $955,105.04 to assume and continue servicing Olympic's factoring relationship with Education Advance.  (Doc. 45-1 at 2–5, Exhibit 1, the Payoff Agreement.)  New Century, the drafter of the agreement, failed to date the contract.  (*Id.* at 5; Doc. 45-1 at 17, Exhibit 2 at 238, 12–19; Doc. 45-1 at 28–29, Exhibit 3 at 172: 20–173: 4.)

On June 15, 2009, New Century alleges that Education Advance converted funds from New Century in the amount of $866,869.00.  This conversion was allegedly identical to the conversion Olympic did not disclose to New Century.  (*Id.* at 6.)  New Century also discovered that the account debtor, Newark Public Schools, is a fraudulent entity.  (*Id.*)

On June 30, 2009, New Century filed the instant suit against Olympic claiming that the Payoff Agreement is void for mutual mistake and that Olympic is liable for negligent misrepresentation, fraudulent nondisclosure, and fraud.  (Doc. 1.)  Although New Century does not allege that Olympic breached the contract, New Century nevertheless seeks rescission of the contract, restitution, damages in the amount of $955,105.04, the exact amount it paid Olympic for the Education Advance account, exemplary damages, attorney's fees, and court costs.  Both parties now move for summary judgment.

II.  Summary Judgment Standard

A party moving for summary judgment must inform the court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The initial burden falls on the movant to identify areas essential to the nonmovant's claim in which there is an "absence of a genuine issue of material fact."  *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).  If the moving party fails to meet its initial burden, the motion must be denied, regardless of the adequacy of any response.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*).  Moreover, if the party moving for summary judgment bears the burden of proof on an issue, either as a plaintiff or as a defendant asserting an affirmative defense, then that party must establish that no dispute of material fact exists regarding all of the essential elements of the claim or defense to warrant judgment in his favor.  *Fontenot v. Upjohn*, 780 F.2d 1190, 1194 (5th Cir. 1986) (the movant with the burden of proof "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor") (emphasis in original).

Once the movant meets its burden, however, the nonmovant must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial.  *Celotex*, 477 U.S. at 323–24.  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citing *U.S. v. Diebold, Inc.*, 369 U.S.

654, 655 (1962)).  Instead, the nonmoving party must produce evidence upon which a jury could reasonably base a verdict in its favor.  *Anderson*, 477 U.S. at 248; *see also DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).  To do so, the nonmovant must "go beyond the pleadings and by [its] own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is a genuine issue for trial."  W*ebb v. Cardiothoracic Surgery Assoc. of North Texas, P.A.*, 139 F.3d 532, 536 (5th Cir.1998) (overruled on other grounds by *Burlington N. & Santa Fe Ry. Co. v. White*, 126 S.Ct. 2405, 2414 (2006)).  Unsubstantiated and subjective beliefs and conclusory allegations and opinions of fact are not competent summary judgment evidence.  *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *Grimes v. Texas Dept. of Mental Health and Mental Retardation*, 102 F.3d 137, 139–40 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992), *cert. denied*, 506 U.S. 825 (1992).  Nor are pleadings summary judgment evidence.  *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1046 (5th Cir. 1996) (citing *Little*, 37 F.3d at 1075).  The nonmovant cannot discharge his burden by offering vague allegations and legal conclusions.  *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 889 (1990).  Nor is the court required by Rule 56 to sift through the record in search of evidence to support a party's opposition to summary judgment.  *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).

Nevertheless, all reasonable inferences must be drawn in favor of the nonmoving party.  *Matsushita*, 475 U.S. at 587–88; *see also Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).  Furthermore, the party opposing a motion for summary

judgment does not need to present additional evidence, but may identify genuine issues of fact extant in the summary judgment evidence produced by the moving party. *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 198–200 (5th Cir. 1988). The nonmoving party may also identify evidentiary documents already in the record that establish specific facts showing the existence of a genuine issue. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990). There is a "genuine" issue of material fact if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

## III. Discussion

Under the economic loss rule, if a plaintiff only seeks to recover for the loss or damage to the subject of a contract, he cannot maintain a tort action. *See, e.g., D.S.A. Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 664 (Tex. 1998) (holding negligent misrepresentation claims barred because plaintiff could not demonstrate an injury distinct, separate, and independent from the economic losses recoverable under a breach of contract claim); *Sterling Chem., Inc. v. Texaco, Inc.*, 259 S.W.3d 793 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (holding economic loss rule barred negligent misrepresentation claim because plaintiff sought to recover damages sustained by virtue of the failure of the subject of a contract); *Highland Crusader Offshore Partners, L.P. v. Molient Corp.*, 281 S.W.3d 237, 252–53 (Tex. App.—Dallas 2009, pet. denied); *Hou-Tex, Inc. v. Landmark Graphics*, 26 S.W.3d 103, 106–07 (Tex. App.—Houston [1st Dist.] 2000, no pet.); *Alejandre v. Bull*, 159 Wash.2d 674 (Wash. 2005) (finding economic loss rule barred misrepresentation claim and noting "the purpose of the economic loss rule is to bar recovery for alleged breach of tort duties where a contractual relationship exists . . . .").

New Century does not allege an injury distinct from that it suffered under the Payoff

Agreement.  Further, New Century seeks the same measure of damages that it paid Olympic to assume the Education Advance account under the Payoff Agreement.  (Doc. 45-1 at 2 ¶ 1.)  New Century therefore fails to show an independent injury sufficient to support its claim for negligent misrepresentation.

To prevail on its fraud claim, New Century must prove that 1) the defendant made a false, material representation; 2) the defendant knew the representation was false or made the representation without any knowledge of its truth; 3) the defendant made the representation with the intent that the other party would act on that representation or intended to induce the party's reliance on the representation; and 4) the plaintiff suffered an injury by actively and justifiably relying on that representation.  *Rivers v. Charlie Thomas Ford, Ltd.*, 289 S.W.3d 353, 358–59 (Tex. App.—Houston [14th Dist.] 2009, pet. denied); *Carlile v. Harbour Homes, Inc.*, 147 Wash. App 193, 205 (Wash. App. 2008).  For a claim of fraudulent nondisclosure, there must also be a duty to disclose.  *Rivers*, 289 S.W.3d at 359; *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex.1998).

New Century asserts that it justifiably relied on Olympic's representation and fraudulent nondisclosure regarding Olympic's factoring relationship and history with Education Advance. New Century says that Olympic "failed to disclose significant irregularities with respect to its factoring relationship with Education Advance" and failed "to comply with its obligation to truthfully and completely provide New Century with information regarding Education Advance once it had undertaken to supply New Century with such information."   (Doc. 43 at 3.) Specifically, New Century asserts that it relied to its detriment on Olympic's characterization of that relationship as "good" and Panteleeff's statement that the only issue Olympic had with Education Advance was the inability of Olympic to handle the increased growth of the account.

7 / 10

(Doc. 1 at 5.)

The Payoff Agreement, however, clearly articulates that the parties' agreement is made without representation or warranty and that New Century cannot hold Olympic liable for uncollectable sums from Education Advance's accounts receivables.   (Doc. 45-1 at 3 ¶ 7.) Paragraph seven of the Payoff Agreement states:

> **7.  *Release and Indemnity.***   Except as expressly provided in this Agreement this termination and release is made, delivered and accepted without representation of warranty, oral or written, express or implied, and is without recourse to [Olympic].

(*Id.* ¶ 7, "Release and Indemnity" clause.)

The term "without recourse" is a technical one within the factoring business that means "without liability to subsequent holders."  *TranCentral, Inc. v. Great S. Express., Inc.*, No. A09-460, 2010 WL 346388, at *7 (Minn. Ct. App. Feb 2, 2010) (noting that "without recourse" language in a buyout agreement precluded factor being bought out from being held liable to buyer or to any subsequent holder of the accounts receivable governed by the initial factoring agreement); *see Skylon Corp. v. Guilford Mills Inc.*, 864 F.Supp. 353, 354 (S.D.N.Y. 1994) (noting that accounts receivable sold "without recourse" shield a seller from liability for uncollectable accounts).  Here, the Payoff Agreement uses the term "without recourse" to shield Olympic from liability for New Century's losses from its inability to collect on Education Advance's accounts receivables.

The Payoff Agreement also contains a merger clause that reads as follows:

> **10.  *Entire Agreement.***   This Payoff Agreement constitutes the entire agreement between the parties hereto concerning the subject matter hereof and may not be altered or amended except by written agreement signed by the [Olympic] and [New Century].  All other prior and contemporaneous agreements, arrangements, and understandings between the parties hereto as to the subject matter hereof are rescinded.

(Doc. 45-1 at 4 ¶ 10.)  When read together, the merger clause in paragraph ten and the release and indemnity clause in paragraph seven of the Payoff Agreement make clear that New Century contractually disclaimed its right to rely on any statements by Olympic not contained within the contract.

Contracting parties may create contractual provisions that disclaim reliance.  *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 61 (Tex. 2008).  Merger clauses in particular can negate the reliance element of tort claims, including fraud.  *Armstrong v. American Home Shield Corp.*, 333 F.3d 566, 571 (5th Cir. 2003) (holding fraud claim barred by a merger clause and language stating no representations of warranties); *U.S. Quest v. Kimmons*, 228 F.3d 399 (5th Cir. 2000) (holding that a merger clause superseding all prior agreements, communications, or understandings was a valid disclaimer of reliance).  When considering whether the parties waived reliance by the terms of the contract, Courts consider whether 1) the terms of the contract were negotiated, rather than boilerplate; 2) the complaining party was represented by counsel; 3) the parties dealt with each other in an arm's length transaction; 4) the parties were knowledgeable in business matters; and 5) the release language was clear.  *Forest Oil Corp.*, 268 S.W.3d at 60.

By its response, New Century acknowledges that "[t]here is no allegation in this lawsuit that Olympic breached any express promise it contractually made or even had a contractual performance obligation under the Pay-Off Agreement."  (Doc. 55 at 2.)  New Century further concedes that "not a single fact or piece of evidence in this record even implies that any form of wrongdoing prior to the execution of the Pay-Off Agreement required resolution in the form of a release."  (*Id.*)

Olympic and New Century are competitors in the factoring business.  The parties

negotiated at arm's length and appear equally sophisticated in their business dealings.  (Doc. 45-1 at 8, Exhibit 2 at 9: 6–15.)  While the terms of the contract were not negotiated, the Payoff Agreement is the Plaintiff's form.  (Doc. 45-1 at 17, Exhibit 2 at 238: 13–19.)  New Century admits that by the Payoff Agreement it purchased only the "factoring relationship that had existed between Olympic and its long-standing factoring client, [Education Advance]."  (Doc. 55 at 2.)  When the debts New Century purchased turned out to be uncollectible, it filed suit against Olympic seeking rescission and damages in tort equal to its costs under the contract.  Pursuant to the Payoff Agreement, however, New Century explicitly disclaimed its right to justifiably rely on any statement, characterization, or omission not contained within the contract.

IV  Conclusion

Accordingly, the Court hereby **ORDERS** that Defendant Olympic Credit Fund, Inc.'s Motion for Summary Judgment (Doc. 45) is **GRANTED**.

The Court further **ORDERS** that Plaintiff New Century Financial, Inc.'s Motion for Partial Summary Judgment (Docs. 43–44) is **DENIED**.

Defendant Olympic's Objection to the Magistrate Judge's Ruling on Plaintiff's Motion for Leave to Take Trial Depositions of Will Narez and Heather Panteleeff (Doc. 52) and Objection to the Magistrate Judge's Ruling on Defendant's Motion for Leave to File First Amended Answer and Counterclaim (Doc. 72) are **MOOT**.

SIGNED at Houston, Texas, this 11th day of March, 2011.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE